T. J. BEALL et al. v. FRED E. GRAHAM.

No. 14,835    (88 Pac. 543.)

SYLLABUS BY THE COURT.

JUDGMENTS—*Lien upon Inherited Indian Land.* A judgment of the district court against an adult Kickapoo Indian is not a lien upon his inherited lands situated in the county where such judgment is rendered.

Error from Brown district court; WILLIAM I. STUART, judge. Opinion filed January 5, 1907. Affirmed.

A. B. Crockett, for plaintiffs in error.

James Falloon, for defendant in error.

The opinion of the court was delivered by

GREENE, J.: Dan Kaw-ke-kah was an adult Kicka-poo Indian. T. J. Beall recovered a judgment against him before a justice of the peace in Brown county and filed a transcript thereof in the district court. Pearl Kaw-ke-kah was Dan's mother and an allottee of the Indian lands in Brown county. Subsequently to the filing of the transcript of the judgment against Dan in the district court Pearl died, leaving Dan as her sole heir to whom, under the law, Pearl's allotment descended. After the death of Pearl the land thus inherited was sold and conveyed by Dan to E. T. Letson, under the direction and with the approval of the secretary of the interior. The deed thereto was delivered by the Indian agent to Letson and was recorded. Letson afterward sold the land to Fred E. Graham.

Subsequently T. J. Beall caused an execution to be issued upon his judgment, which was delivered to his codefendant, I. N. Smith, sheriff of Brown county, who attempted to enforce it against this land. Fred E. Graham, the owner, instituted an injunction suit against T. J. Beall and the sheriff to restrain them from advertising or selling the land under the execution. Upon a trial the injunction was made perpetual, and the defendants prosecute this proceeding to have that judgment reversed.

The defendants contend that Beall's judgment became a lien upon the land inherited by Dan from his mother, and was a lien thereon when Dan conveyed it to Letson. To decide this question reference must be had to the grant made by the United States to the Kickapoo Indians and the restrictions under which they hold their allotments.

Section 5 of chapter 119 of the act of February 8, 1887 (24 U. S. Stat. at L. p. 388), which is "An act to provide for the allotment of lands in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and the

territories over the Indians, and for other purposes,"
provides as follows:

"That upon the approval of the allotments provided
for in this act by the secretary of the interior, he shall
cause patents to issue therefor in the name of the
allottees, which patents shall be of the legal effect, and
declare that the United States does and will hold the
land thus allotted, for the period of twenty-five years,
in trust for the sole use and benefit of the Indian to
whom such allotment shall have been made, or, in case
of his decease, of his heirs according to the laws of the
state or territory where such land is located, and that
at the expiration of said period the United States will
convey the same by patent to said Indian, or his heirs
as aforesaid, in fee, discharged of said trust and free
of all charge or encumbrance whatsoever; provided,
that the president of the Untied States may in any case
in his discretion extend the period. And if any con-
veyance shall be made of the lands set apart and al-
lotted as herein provided, or any contract made touch-
ing the same, before the expiration of the time above
mentioned, such conveyance or contract shall be abso-
lutely null and void." (Page 389.)

Section 7 of chapter 888 of the act of May 27, 1902
(32 U. S. Stat. at L. p. 275), provides:

"That the adult heirs of any deceased Indian to
whom a trust or other patent containing restrictions
upon alienation has been or shall be issued for lands
allotted to him may sell and convey the lands inherited
from such decedent, but in case of minor heirs their in-
terests shall be sold only by a guardian duly appointed
by the proper court upon the order of such court, made
upon petition filed by the guardian, but all such convey-
ances shall be subject to the approval of the secretary
of the interior, and when so approved shall convey a
full title to the purchaser, the same as if a final patent
without restriction upon the alienation had been issued
to the allottee. All allotted land so alienated by the
heirs of an Indian allottee and all land so patented to a
white allottee shall thereupon be subject to taxation
under the laws of the state or territory where the same
is situate; provided, that the sale herein provided for
shall not apply to the homestead during the life of the
father, mother or the minority of any child or children."

It will be observed from a reading of section 5 that the United States holds the lands thus allotted in trust for the sole use and benefit of the Indians for the period of twenty-five years. The allotment was made in 1895, therefore the twenty-five years had not expired when it is claimed the judgment lien attached. The United States still held the land in trust for the Indians. It is sought to avoid the restrictions of this section upon the power of the Indian to alienate his lands by that portion of section 7 above quoted which provides:

"That the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey the lands inherited from such decedent."

Since there was no time restriction upon Dan to sell the land, it is claimed that upon the death of his mother the judgment lien immediately attached. This conclusion becomes impossible in view of the other provision of the same section which reads (referring to inherited lands) : "All such conveyances shall be subject to the approval of the secretary of the interior, and when so approved shall convey a full title." The language "all such conveyances" includes sales by adult heirs as well as sales made by the guardians of minor heirs. Whether the lands be held by allotment or inheritance the title remains in the United States in trust for the Indians for twenty-five years, and at least during that period a title by inheritance cannot be devested without the approval of the secretary of the interior. Section 5 absolutely prohibits an allottee from selling his allotment for twenty-five years. Section 7 permits an adult to sell the land inherited at any time provided he does so with the approval of the secretary of the interior.

It is also contended that the provisions of sections 5 and 7 have no application to transfers of inherited lands by operation of law, such as the enforcement of a judgment lien. The answer to this is that the title was reserved in the United States in trust to protect the

Indian from his own improvidence and the cupidity of others. To permit the land to be sold for his personal liabilities would. defeat the object of this trust and the purpose of the restriction.

The judgment is affirmed.